UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 0:26-cv-03301-ECT-ECW

John Choi, *et al.*

Plaintiffs,

v.

United States Department
of Homeland Security, *et al.*,

Defendants.

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT OR, IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT**

---

Defendants United States Department of Homeland Security (DHS) and Markwayne Mullin (Defendants), by and through their attorneys, Daniel N. Rosen, United States Attorney, and Perry F. Sekus, Assistant United States Attorney, submit this Memorandum of Law in Support of Motion to Dismiss Amended Complaint or, in the alternative, Motion for Summary Judgment.

## I. INTRODUCTION

Plaintiffs John Choi (Choi), Ramsey County Attorney, and Bob Fletcher (Fletcher), Ramsey County Sheriff (Plaintiffs), seek declaratory and injunctive relief under the Administrative Procedure Act (APA) and the Tenth Amendment to the United States Constitution. Plaintiffs challenge what they view as Defendants' purported failure to adequately respond to a request for federal law enforcement information regarding the temporary detention of St. Paul resident ChongLy Thao. Plaintiffs contend that their letter constituted a *Touhy* request and that DHS's failure to accede to their demands constituted agency action unlawfully withheld and unreasonably delayed or, alternatively, was

arbitrary and capricious, not in accordance with the law, and in excess of statutory authority. Plaintiffs also claim Defendants infringed upon their core sovereign interest in investigating and enforcing State criminal law in violation of the Tenth Amendment to the United States Constitution.

The Court should dismiss the Amended Complaint in its entirety. First, Plaintiffs' claim under 5 U.S.C. § 706(1) of the APA to compel agency action fails because Defendants have responded to Plaintiffs' request, which renders the claim moot. Because Defendants have now responded, there is no longer any ongoing agency inaction for this Court to remedy, and the Court may compel only discrete action that an agency is legally required to take. Second, Plaintiffs' challenge under § 706(2) also fails to state a claim because the decisions that Plaintiffs challenge are committed to agency discretion and Plaintiffs' request did not fall under the procedural requirements of the *Touhy* regulations. Finally, Plaintiffs' Tenth Amendment claim fails to state a claim for relief because the Amendment provides no basis for state officials to compel action by a federal agency in contravention of the Supremacy Clause. In the alternative, the Court should grant Defendants' Motion for Summary Judgement as Defendants' actions were not "arbitrary, capricious, an abuse of discretion, otherwise not in accordance with law," or "in excess of statutory authority." 5 U.S.C. § 706(2)(A), (C).

## II. BACKGROUND

### A. DHS *Touhy* Regulations

The Housekeeping Statute, 5 U.S.C. § 301, provides that "[t]he head of an Executive department…may prescribe regulations for the government of his

department, the conduct of its employees, the distribution and performance of its business, and the custody, use, and preservation of its records, papers, and property." Pursuant to the statute, DHS has promulgated its own regulation governing requests for official information in state or federal proceedings. The Supreme Court has upheld the legality of these regulations in *United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951). The regulations are commonly referred to as "*Touhy*" regulations. *Id.* at 468-69.

DHS's *Touhy* regulations apply to "[s]ervice of summonses and complaints or other requests or demands directed to the Department of Homeland Security or to any Department employee or former employee in connection with federal or state litigation arising out of or involving the performance of official activities of the Department." 6 C.F.R. § 5.41(a)(1). "[T]he term 'litigation' encompasses all pre-trial, trial, and post-trial stages…before courts, commissions, boards…grand juries, or other judicial or quasi-judicial bodies or tribunals." 6 C.F.R. § 5.41(d). The regulations also apply to:

> The oral or written disclosure, in response to subpoenas, orders, or other requests or demands of federal or state judicial or quasi-judicial or administrative authority as well as state legislative authorities (collectively, "demands"), whether civil or criminal in nature, or in response to requests for depositions, affidavits, admissions, responses to interrogatories, document production, interviews, or other litigation-related matters, including pursuant to the Federal Rules of Civil Procedure, the Federal Rules of Criminal Procedure, or applicable state rules (collectively, "requests"), of any material contained in the files of the Department, any information relating to material contained in the files of the Department, or any information acquired while the subject of the demand or request is or was employed by the Department, or served as Secretary of the Department, as part of the performance of that person's duties or by virtue of that person's official status.

6 C.F.R. § 5.41(a)(2). Compliance with these regulations is a condition precedent to obtaining DHS information. *U.S. ex rel. Touhy v. Ragen*, 340 U.S. 462, 469-70 (1951).

DHS's Office of the General Counsel must authorize any disclosure of the Department's official information. 6 C.F.R.§ 5.44(a). In the event of a compliant request, departmental officials consider a list of enumerated factors in deciding whether disclosure is warranted. 6 C.F.R. § 5.48. Importantly, as a threshold matter, the regulations on whether disclosure is appropriate are only applicable when litigation is involved, 6 C.F.R. § 5.41(a)(1), and the request originates from "federal or state judicial or quasi-judicial or administrative authority as well as state legislative authorities." 6 C.F.R. § 5.44(a)(2). In the absence of either litigation or a request derived from an enumerated authority, DHS's decision to disclose official information to external law enforcement agencies is a matter of discretion. 6 C.F.R § 5.41(i) (discretionary disclosure permissible "to federal, state, local, or foreign prosecuting and law enforcement authorities in conjunction with criminal law enforcement investigations, prosecutions, or other proceedings….").

**Procedural Background**

The Ramsey County Sheriff's Office (RCSO) sent a letter on February 24, 2026, to an Enforcement and Removal Operations (ERO) Field Office Director (FOD) for Immigration and Customs Enforcement (ICE), a component of DHS, requesting the following law enforcement information:

1. Any documents, audio and/or video recordings, and statements for any operation directly or indirectly associated with 724 Case Avenue, Saint Paul, MN 55106, between 01/01/2026 and 01/31/2026; and

2. Names of all Federal Agents, from ICE or other agencies, involved in the removal from his home and detainment of U.S. Citizen Chongly Scott Thao (date of birth, 05/11/69).

*See* Am. Compl. ¶ 58 (ECF 9).

On March 20, 2026, the Ramsey County Attorney's Office (RCAO) sent a letter captioned as a "Touhy Demand"[1] (Demand) to DHS OGC, requesting the following information in furtherance of a "pending" law enforcement "investigation":

1. Any and all documents, communications, and records, including electronically stored information, relating to the incident, including but not limited to incident reports, witness information and interview records or notes, use-of force reports, internal correspondence, body-worn camera or surveillance footage, radio transmissions, GPS/AVL data, and chain-of-command notifications;

2. Policies, directives, standard operating procedures, and training materials in effect on January 18, 2026, concerning home entry; the requirements for warrants; and the questioning, apprehension, and detention of immigrants and U.S. citizens;

3. Records identifying and reflecting duty status, assignment, and supervisory oversight for any officers or agents of DHS or its subcomponents at the scene of the incident or directly or indirectly involved off-site; and

4. Access to interview federal agents and officers on duty on January 18, 2026, in Saint Paul, Ramsey County, Minnesota, and/or who were involved in the incident.

*See id.* at ¶ 60, Ex. 2. Given the subject matter of the request, DHS forwarded the Demand to ICE for further handling.[2]

---

[1] Note that the only request relevant to this APA action and Plaintiffs' allegations is the request captioned as a "Touhy Demand." The initial request to the ICE ERO FOD was not captioned as nor submitted pursuant to the DHS *Touhy* regulations on which Plaintiffs APA allegations are based.

[2] Unlike other components of DHS, ICE has not promulgated component specific regulations and thus applies the DHS *Touhy* regulations.

After not receiving a response to their Demand, Plaintiffs filed suit on July 15, 2026. On July 21, 2026, prior to Defendants being served and notified of the suit, ICE responded to RCAO's Demand.[3] *Id* at ¶ 68.

In its response, ICE articulated the basis for declining to process Plaintiffs' Demand under the DHS *Touhy* regulations, indicating that the requested information was not associated with ongoing litigation,[4] and instead processing the request as a discrete request for information shared between law enforcement agencies. The decision to treat the Demand as such, and whether to disclose the requested information, rested within the ICE's discretion. *Id*. at ¶ 69; § 5.41(i). Exercising its discretion, ICE declined Plaintiffs' Demand.

Dissatisfied with ICE's response, Plaintiffs filed an amended complaint against Defendants on August 4, 2026. (ECF 9).

## III. STANDARD OF REVIEW

The threshold question in any APA motion to dismiss in the District of Minnesota is which procedural standard governs. As the APA is not an independent jurisdictional provision but merely provides the framework for judicial review of agency action, the appropriate procedural standard is Rule 12(b)(6). *See Ouachita Watch League v. Henry*, 59 F. Supp. 3d 922, 931 (E.D. Ark. 2014) (quoting *Iowa League of Cities v. EPA*, 711 F.3d 844, 863 n.12 (8th Cir. 2013) ("[T]he APA's requirements are part of a party's cause of action and are not jurisdictional."). Accordingly, a motion to dismiss APA claims on the

[3] Although not the subject of this APA action, ICE also provided a response to the initial request from the RCSO to the ICE ERO FOD on the same day.

[4] *See* 6 C.F.R. § 5.41(a), (d).

grounds that there is no final agency action under 5 U.S.C. § 704 and the exception for actions committed to agency discretion under 5 U.S.C. § 701(a)(2) are properly brought and analyzed under Rule 12(b)(6), not Rule 12(b)(1). *Ouachita Watch League*, 59 F. Supp. 3d at 931.

In reviewing a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6) in an APA action, the court must accept as true all of the factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court is not bound to accept as true legal conclusions couched as factual allegations and the general rule that the Court must accept as true all the allegations contained in a complaint is inapplicable to legal conclusions. *Ashcroft,* 556 U.S. at 678–79 (quoting *Twombly*, 550 U.S. at 555). A court considering a Motion to Dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. *Ashcroft,* 556 U.S. at 679. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. *Id*. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Id*. In an APA action, the complaint must plausibly allege that the challenged agency action was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706(2).

In APA cases, the entire case on review is only a question of law, and thus, there is no inherent barrier to reaching the merits at the 12(b)(6) stage. *See Mahnomen Cnty., Minn. v. Bureau of Indian Affs.,* 604 F. Supp. 2d 1252, 1256 (D. Minn. 2009) (quoting *Marshall County Health Care Auth. v. Shalala*, 988 F.2d 1221, 1226 (D.C. Cir. 1993)) ("The entire case on review is a question of law, and only a question of law. And because a court can fully resolve any purely legal question on a motion to dismiss, there is no inherent barrier to reaching the merits at the 12(b)(6) stage"); *United Food & Com. Workers Union, Loc. No. 663 v. United States Dep't of Agric*., 532 F. Supp. 3d 741, 769 (D. Minn. 2021).

In APA review, the Court sits as an appellate tribunal. *Mukherji v. Miller*, No. 4:24CV3170, 2026 WL 895708 (D. Neb. Jan. 28, 2026); *Border States Indus., Inc. v. United States Citizenship & Immigr. Servs*., 751 F. Supp. 3d 956 (D. Neb. 2024). Courts can resolve purely legal questions on a motion to dismiss without converting to summary judgment, particularly when the challenge involves statutory interpretation or threshold legal issues that do not require examination of the administrative record. *See Bread for the City, Inc. v. United States Dep't of Agric*., 211 F. Supp. 3d 327 (D.D.C. 2016) (when a complaint raises a purely legal questions—whether a statute required the agency to take a particular action—it is procedurally permissible and appropriate to resolve the merits at the motion to dismiss stage); *All. for Nat. Health, USA v. United States*, No. 24-CV-2989 (CRC), 2025 WL 1938165 (D.D.C. 2025) (court resolved purely legal questions of regulatory interpretation on a Rule 12(b)(6) motion while deferring other questions requiring the administrative record to the

summary judgment stage). Thus, this Court can resolve purely legal questions, such as regulatory interpretation and compliance, on a Rule 12(b)(6) motion without converting to summary judgment.

In the alternative, Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted “if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.” Fed. R. Civ. P. 56(a). In a case involving review of a final agency action under the APA, however, the standard set forth in Rule 56(a) does not apply because of the limited role of a court in reviewing the administrative record. *Nat'l Fed'n of the Blind v. U.S. Abilityone Comm'n*, 421 F. Supp. 3d 102, 114 (D. Md. 2019) (citing *Otsuka Pharm. Co., Ltd. v. Burwell*, No. GJH-15-852, 2015 WL 3442013, at *5 (D. Md. May 27, 2015)). “It is well-established that judicial review under the APA is limited to the administrative record that was before the agency when it made its decision." *Voyageurs Nat. Park Ass'n v. Norton*, 381 F.3d 759, 766 (8th Cir. 2004). Additionally, by confining judicial review to the administrative record, "the APA precludes the reviewing court from conducting a de novo trial and substituting its opinion for that of the agency." *Id.*

Summary judgment thus serves as the “mechanism for deciding, as a matter of law, whether the agency action is supported by the administrative record and otherwise consistent with the APA standard of review.” *Sierra Club v. Mainella*, 459 F. Supp. 2d 76, 90 (D.D.C. 2006) ( citing *Richards v. INS*, 554 F.2d 1173, 1177 (D.C. Cir. 1977)); *Friends of Animals v. Ross*, 396 F. Supp. 3d 1,7 (D.D.C. 2019) (quoting *Mainella,* 459 F. Supp. 2d at 90); *Mukherji*, 2026 WL 895708 at *1 (quoting *Friends of Animals,* 396 F. Supp. 3d at

7). "[T]he function of the district court is to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did," *Mainella*, 459 F. Supp. 2d at 90 (quoting *Occidental Engineering Co. v. INS*, 753 F.2d 766, 769–70 (9th Cir. 1985)), and that the agency decisions were not arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with the law. *Mandan, Hidatsa & Arikara Nation v. U.S. Dep't of the Interior*, 95 F.4th 573 (8th Cir. 2024); *Firearms Regul. Accountability Coal., Inc. v. Garland*, 112 F.4th 507 (8th Cir. 2024).

Courts will generally find agency action is arbitrary and capricious if the agency relied on factors Congress did not intend it to consider, entirely failed to consider an important aspect of the problem, offered an explanation running counter to the evidence, or rendered a decision so implausible it could not be ascribed to a difference in view or agency expertise. *Minnesota v. United States Dep't of Agric.*, 826 F. Supp. 3d 975, 1000 (D. Minn. 2026) (citing *Missouri ex rel. Bailey v. U.S. Dep't of Interior, Bureau of Reclamation*, 73 F.4th 570, 576–77 (8th Cir. 2023)); *Missouri ex rel. Bailey*, 73 F.4th at 576–77 (citing *Cent. S.D. Co-op Grazing Dist. v. Sec'y of U.S. Dep't of Agric.*, 266 F.3d 889, 894 (8th Cir. 2001) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)). A reviewing court "simply ensures that the agency has acted within a zone of reasonableness and, in particular, has reasonably considered the relevant issues and reasonably explained the decision." *Minnesota*, 826 F. Supp. 3d at 1000 (quoting *FCC v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021)).

Plaintiffs bear the burden of proving the agency's action was arbitrary and capricious. *State of South Dakota v. United States Department of the Interior*, 423 F.3d

790, 800 (8th Cir. 2005) (citing *United States v. Massey*, 380 F.3d 437, 440 (8th Cir. 2004)). Agency decisions are given "a high degree of deference." *Voyageurs Nat. Park Ass'n*, 381 F.3d at 763 (quoting S*ierra Club v. Envtl. Prot. Agency*, 252 F.3d 943, 947 (8th Cir. 2001)); *see also State by & through Ellison v. Oz*, 828 F. Supp. 3d 966, 988 (D. Minn. 2026) (quoting *Org. for Competitive Mkts. v. U.S. Dep't of Agric.*, 912 F.3d 455, 459 (8th Cir. 2018)). The Court must uphold the agency's decision if it is supportable on any rational basis. *Voyageurs Nat. Park Ass'n*, 381 F.3d at 763 (citing *friends of Richard-Gebaur Airport v. FAA*, 251 F.3d 1178, 1184 (8th Cir. 2001)). Particular deference[5] must be given when an agency acts within its own sphere of expertise. *Voyageurs Nat. Park Ass'n,* 381 F.3d at 763 (citing *Friends of the Boundary Waters Wilderness v. Dombeck*, 164 F.3d 1115, 1128 (8th Cir. 1999)).

## IV. ARGUMENT

**Motion to Dismiss**

### A. Plaintiffs' § 706(1) claim is moot because the agency has responded to Plaintiffs' Demand.

Article III of the Constitution grants the Judicial Branch authority to adjudicate "Cases" or "Controversies." U.S. Const. Art. III, § 2. An actual controversy must be extant

---

[5] The Supreme Court's decision in *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024), overruled *Chevron U.S.A., Inc. v. Natural Resources Defense Council*, 467 U.S. 837 (1984). Under *Loper Bright*, courts must exercise independent judgment in determining the meaning of statutes, rather than deferring to agency interpretations. However, the arbitrary and capricious standard under § 706(2)(A) remains unchanged, and the agency's factual determinations and policy judgments continue to receive substantial deference.

not only at the time a complaint is filed, but also through all stages of the litigation. *Alvarez v. Smith,* 558 U.S. 87, 92 (2009). The dispute between the parties must at all times remain "definite and concrete, touching the legal relations of parties having adverse legal interests." *North Carolina v. Rice*, 404 U.S. 244, 246 (1971). Thus, "[t]hroughout the litigation, the party seeking relief must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision." *Spencer v. Kemna*, 523 U.S. 1, 7 (1998). When a party contends, like here, that factual or legal developments since the filing of suit have eliminated the case or controversy, the doctrine of mootness applies. *Id*. at 7; *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477 (1990).

At the time this lawsuit was filed, Defendants had yet to respond to Plaintiffs' Demand. Plaintiffs now acknowledge that Defendants have responded, albeit not in the manner they demand. Am. Compl., ¶ 8; *Brazil v. Ark. Dep't. of Hum. Servs.*, 892 F.3d 957, 959 (8th Cir. 2018). Because Defendants have provided a response, there is no longer any ongoing agency inaction for this Court to remedy, thereby rendering Plaintiffs' claim moot. *Kass v. W. Dubuque Cmty. Sch. Dist.*, 101 F.4th 562, 566 (8th Cir. 2024) (case is moot when a federal court can no longer grant effective relief). The fact that Plaintiffs are dissatisfied with the Agency's response does not constitute agency action unlawfully withheld or unreasonably delayed. *Brazil*, 892 F.3d at 959 (citing *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013)).

Plaintiffs' § 706(1) claim is not saved by the voluntary cessation or capable of repetition exceptions to the mootness doctrine. *See United States v. W.T. Grant Co.*, 345

U.S. 629 (1953). The Agency's response is a completed administrative action, not a strategic maneuver designed to evade judicial review only to later "pick up where [it] left off." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013); *Hillesheim v. Holiday Stationstores, Inc.*, 903 F.3d 786, 791 (8th Cir. 2018) ("Generally, a claim is moot when changed circumstances already provide the requested relief and eliminate the need for court action"). Nor is the alleged injury capable of repetition because the Agency's response is a final agency action and any later request would be a new, proceeding-specific request**,** not a repetition of the challenged agency decision. *Usher v. U.S. Dep't of Just.*, 698 F. Supp. 3d 174, 176–77 (D.D.C. 2023) (a subsequent request would not "duplicate or revive" dispute over whether DOJ properly denied earlier *Touhy* request). For these reasons, the Court should dismiss Plaintiffs' § 706(1) claim as moot. *Id*. at 177.

**B. Plaintiffs' § 706(2) claim fails to state a claim for relief because there was no final agency action under DHS's *Touhy* regulations pursuant to 5 U.S.C. § 704; any final agency action was committed to agency discretion pursuant to 5 U.S.C § 701(a)(2); and there is no cognizable cause of action.**

***Final Agency Action***

The APA provides a cause of action only for "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704; *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997). For an APA action to proceed, the plaintiff must establish that the agency's response constitutes final agency action under 5 U.S.C. § 704. For an agency's action to be final it (1) must mark the consummation of the agency's decision-making process and not be merely tentative or interlocutory, and (2) must be one by which rights or obligations have been determined, or from which legal

consequences will flow. *See Bennett*, 520 U.S. at 177-78; *Union Pac. R.R. Co. v. U.S. R.R. Ret. Bd.*, 162 F.4th 908, 917 (8th Cir. 2025). As to the second prong, "the agency action must inflict some legal injury upon the party seeking judicial review," either by compelling affirmative action or prohibiting otherwise lawful action. *Union Pac. R.R. Co.*, 162 F.4th at 917 (quoting *Sisseton-Wahpeton Oyate of Lake Traverse Rsrv. v. U.S. Corps of Eng'rs,* 888 F.3d 906, 915 (8th Cir. 2018)).

In the instant action, Plaintiffs base their APA claims on Defendants' alleged failure to appropriately apply the DHS *Touhy* regulations and provide Plaintiffs the information requested in the Demand. Defendants' decision not to share information with Plaintiffs and ultimate response to the Demand, however, was not pursuant to the *Touhy* regulatory framework, as the *Touhy* framework did not apply to Plaintiffs' Demand. Thus, Defendants' actions do not constitute reviewable agency action under 5 U.S.C. § 704. Defendants' response was not a definitive *Touhy* denial at all because the regulations never applied.

The scope of the procedural parameters of the DHS regulations is outlined in 6 C.F.R. §5.41. In order for the procedural parameters to apply to the disclosure of information under § 5.41(a)(2), the disclosure must be "in response to subpoenas, orders, or other requests or demands of federal or state judicial or quasi-judicial or administrative authority as well as state legislative authorities," or "in response to requests for depositions, affidavits, admissions, responses to interrogatories, document production, interviews, or other litigation-related matters," as litigation is defined in the regulations. 6 C.F.R. § 5.41(a)(2); 6 C.F.R. § 5.41(d).

Plaintiffs have failed to allege that they qualify as a "state judicial or quasi-judicial or administrative authority…" or "state legislative" authority. 6 C.F.R. § 5.41(a)(2). Plaintiffs assert that "the regulations apply beyond requests associated with pending litigation." Am. Compl., ¶¶ 44, 70 (citing 6 C.F.R. § 5.41(a)(2).[6] The regulatory language, however, is clear; the procedural requirements of § 5.41(a)(2) only apply "in response to subpoenas, orders, or other requests or demands of federal or state *judicial or quasi-judicial or administrative authority as well as state legislative authorities*" or " in response to requests for depositions, affidavits, admissions, responses to interrogatories, document production, interviews, or other *litigation*-related matters." *Id.* (emphasis added). Prosecutors and law-enforcement agencies perform executive functions and are part of the executive branch in Minnesota for separation-of-powers purposes.[7]

Furthermore, Plaintiffs' Demand does not meet the definition of "litigation" as outlined in the regulations. For the purposes of Subpart C, the term litigation encompasses "all pre-trial, trial, and post-trial stages of all judicial or administrative actions, hearings, investigations, or similar proceedings before courts, commissions, boards (including the

---

[6] Plaintiffs also cite to 19 C.F.R. § 103.21, however that regulation pertains only to U.S. Customs and Border Protection, a separate component of DHS, not a party to this suit.

[7] Under Minnesota law, criminal investigation and prosecution are executive functions: prosecutors are executive officials, and records maintained by prosecuting and law-enforcement agencies are records of the executive branch. *See State v. Carriere*, 290 N.W.2d 618, 620 n.3 (Minn. 1980) ("The prosecutor is an executive official."); *State v. M.D.T.*, 831 N.W.2d 276, 279–84 (Minn. 2013) (treating records maintained by county sheriff, county attorney, municipal police and city attorney, Attorney General, DOC, and BCA as executive-branch records).

Board of Appellate Review), grand juries, or other judicial or quasi-judicial bodies or tribunals, whether criminal, civil, or administrative in nature. 6 C.F.R § 5.41(d). Plaintiffs have not pointed to any kind of proceedings that would fall under the procedural parameters of the regulation. Instead, Plaintiffs seek the requested information for their "investigation" of the incident at issue. *See, e.g.*, Am. Compl. ¶ 57. However, an "investigation" is distinct from a pretrial, trial, or post-trial matter.[8] While Plaintiffs contend that the Agency's interpretation of § 5.41(d) is wrong because the regulation encompasses "all judicial or administrative actions, hearings, *investigations*, or similar proceedings before courts, commissions, boards, . . . grand juries, or other judicial or quasi-judicial bodies or tribunals, whether *criminal*, civil, or administrative in nature" (emphasis in original), Am. Compl., ¶ 45, Plaintiffs omit the preceding clause of the regulation, which reads:

> For purposes of this subpart the term litigation encompasses all *pre-trial, trial, and post-trial* stages of all judicial or administrative actions, hearings, investigations, or similar proceedings before courts, commissions, boards (including the Board of Appellate Review), grand juries, or other judicial or quasi-judicial bodies or tribunals, whether criminal, civil, or administrative in nature. (Emphasis added).

6 C.F.R. § 5.41(d) (emphasis added).

Plaintiffs have also failed to identify an enumerated entity the matter is before. Plaintiffs state that there is an open "investigation" but do not assert that the matter is before a court, commission, board, grand jury, or other judicial or quasi-judicial body

[8] Trial is undefined in the regulation but is generally defined as "[a] formal judicial examination of evidence and determination of legal claims in an adversary proceeding." *Trial*, Black's Law Dictionary 1644 (9th Ed. 2009).

or tribunal. 6 C.F.R. § 5.41(d). As such, Plaintiffs' Demand does not meet the definition of litigation" as outlined in the regulations.

Plaintiffs' Demand is also not "in response to requests for depositions, affidavits, admissions, responses to interrogatories, interrogatories, document production, interviews, or other *litigation-related* matters." 6 C.F.R. § 5.41(a)(2) (emphasis added). Whether a particular request constitutes "litigation" within the meaning of 6 C.F.R. § 5.41(d), or whether Plaintiffs are a enumerated entity under 5.41(a)(2), are purely legal questions of regulatory interpretation. The Court need only compare the regulatory text against the undisputed facts of the request.

As the procedural requirements of DHS's *Touhy* regulations at 6 C.F.R. Part 5, Subpart C apply only as described above, Plaintiffs' Demand did not trigger the procedural requirements of Subpart C, the regulations did not apply, and there is no final agency action for the Court to review under the APA.

Additionally, DHS' *Touhy* regulations contain a law enforcement carveout. 6 C.F.R. § 5.41 is a threshold applicability provision that removes the request from Subpart C coverage, meaning the standard *Touhy* analysis was never required. Section 5.41(i) expressly provides that nothing in Subpart C "affects the disclosure of official information to federal, state, local, or foreign prosecuting and law enforcement authorities in conjunction with criminal law enforcement investigations, prosecutions, or other proceedings. 6 C.F.R. § 5.41. If the requester is a law enforcement authority seeking information in conjunction with a criminal law enforcement investigation or prosecution, and the request is treated pursuant to § 5.41, the *Touhy* regulations simply do not govern

the disclosure decision, and the agency's response under law enforcement sharing policies is not a *Touhy* determination subject to APA review. Where the law enforcement sharing carve-out applies, there are no *Touhy* procedural protections to bypass--the regulations expressly remove such requests from the *Touhy* framework and the agency's decision to decline the request under the law enforcement sharing framework is a separate and independent exercise of discretion that does not require engagement with the *Touhy* factors.

Furthermore, Defendants' decision not to share information with Plaintiffs, and Defendants' ultimate response to the Demand, merely resulted in practical consequences to Plaintiffs and did not inflict a legal injury upon them. *Nat'l Ass'n of Home Builders v. Norton*, 415 F.3d 8, 14-15 (D.C. Cir. 2005). Plaintiffs do not have a legal right to this information, and Defendants' decision does not legally prohibit Plaintiffs from conducting their investigation–it merely limits the type of information that Plaintiffs can rely on when conducting their investigation. *See Am. Bar. Assoc. v. Dep't of Educ.*, 370 F.Supp.3d 1, 25 (D.D.C. 2019) (quoting *Nat'l Assoc. of Home Builders*, 415 F.3d at 15) ("I]f the practical effect of the agency action is not a certain change in the legal obligations of a party, the action is non-final for purposes of judicial review.").

For all of the above reasons, there is no final agency action for the Court to review, Defendants correctly applied the regulations, and Plaintiffs' claims must therefore be dismissed.

***Defendants' Determination was Discretionary***

The APA explicitly excludes from judicial review those agency actions that are "committed to agency discretion by law." 5 U.S.C. § 701(a)(2). Actions are committed to agency discretion where it is not possible to devise an adequate standard of review, including where the relevant statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion. *Ngure v. Ashcroft*, 367 F.3d 975, 982 (8th Cir. 2004) (quoting *Heckler v. Chaney,* 470 U.S. 821, 830 (1985). Additionally, there is a presumption of unreviewability for certain administrative decisions that are traditionally left to agency discretion, including whether to institute an enforcement action. *Heckler*, 470 U.S. at 832.

To determine whether a matter has been committed to agency discretion by law, courts "'consider both the nature of the administrative action at issue and the language and structure of the statute that supplies the applicable legal standards for reviewing that action.'" *Tamenut v. Mukasey*, 521 F.3d 1000, 1003 (8th Cir. 2008) (quoting *Secretary of Labor v. Twentymile Coal Co.,* 456 F.3d 151, 156 (D.C. Cir. 2006)). An important factor in discerning whether there is a meaningful standard is whether the agency decision involves complicated balancing of factors peculiarly within the agency's expertise. *Ngure*, 367 F.3d at 982 (quoting *Heckler,* 470 U.S. at 831). "The crucial question is whether the statute supplies any 'meaningful standard against which to judge the agency's exercise of discretion.'" *Fond du Lac Band of Lake Superior Chippewa v. Wheeler*, 519 F. Supp. 3d 549, 565 (D. Minn. 2021) (quoting *Weyerhaeuser Co. v. United States Fish and Wildlife Serv.*, 586 U. S. 9, 23

(2018) (quoting *Lincoln v. Vigil*, 508 U.S. 182, 191 (1993)). Absent such a standard, the court lacks authority to review the decision. *Greer v. Chao*, 492 F.3d 962 (8th Cir. 2007).

Plaintiffs' claims rest on the premise that Defendants were required to process the Demand under Subpart C of the Touhy regulations, and that Defendants lacked a lawful basis to decline disclosure. Am. Compl. ¶¶ 82–84. As articulated above, the procedural requirements of Subpart C of the regulations did not apply to Plaintiffs' Demand, as Plaintiffs are not an enumerated entity, the Demand was not associated with "litigation," and the request was correctly treated as a request for law enforcement information. *See* 6 C.F.R. § 5.41(a)(2), 6 C.F.R. § 5.41(d), and 6 C.F.R. § 5.41(i). Outside of Subpart C, there is no statute or regulation constraining Defendants' decision whether to share law enforcement information with a state investigator. There is therefore no law to apply, no legal right to vindicate, and no legal consequence flowing from Defendants' decision.

The conclusion that agency action is not susceptible to review is supported by the absence of any statutory factors to guide the agency's decision-making process, in combination with the open-ended nature of the inquiry. *Tamenut*, 521 F.3d at 1003. The decision-making process has no defined boundaries, criteria, or judicially manageable standards and is one where the extent of the inquiry is not marked with certainty and where the particular circumstances vary so greatly from case to case that no generalized standard could be framed to guide or constrain the agency's judgment. Thus, the decision is left to agency discretion, there is no legal standard for the Court

to consider, and the decision is beyond the scope of judicial review. Plaintiffs point to no legal authority that compels Defendants to share the investigatory law enforcement information that they seek. To overcome a presumption of non-reviewability, a plaintiff must identify specific statutory language circumscribing the agency's discretion and providing meaningful standards defining the limits of that discretion. *Save Lake Superior Ass'n v. Napolitano*, No. 08-CV-1173 (JMR/RLE), 2009 WL 690089 (D. Minn. Mar. 12, 2009). Plaintiffs fail to do so.

Courts have held that agency information-sharing decisions are committed to agency discretion under § 701(a)(2) when the governing statute provides no meaningful standards beyond basic prerequisites. *Jaymar-Ruby, Inc. v. F.T.C.*, 651 F.2d 506, 510-11 (7th Cir. 1981) (Where Congress specified only confidentiality and official law enforcement purpose requirements but was otherwise silent on what factors should be considered by the Commission in reaching its decision, there was simply no law to apply, making such decisions unreviewable). *See also Heckler,* 470 U.S. at 832-33 (agency's decision not to act is presumptively committed to agency discretion under § 701(a)(2), and that this presumption may be rebutted only where the substantive statute has provided guidelines for the agency to follow).

Additionally, the Supreme Court has established that an agency's decision not to take enforcement action is presumptively committed to agency discretion by law because there is no law for a reviewing court to apply. *Heckler*, 470 U.S. at 831. The District of Minnesota and Eighth Circuit have applied this principle broadly to law enforcement-related decisions. *Save Lake Superior Ass'n v. Napolitano*, No. 08-CV-1173 (JMR/RLE), 2009

WL 690089 at *3 n.5 (D. Minn. Mar. 12, 2009) (quoting *Heckler*, 470 U.S. at 831) (while there is normally a strong presumption of reviewability for agency action, this presumption is reversed for agency refusals to take enforcement steps); *Greer*, 492 F.3d at 965-66 (citing *Giacobbi v. Biermann*, 780 F. Supp. 33, 37 (D.D.C. 1992) (matters within the "enforcement arena" are committed to agency discretion). Absent a law constraining an agency's discretion in making these decisions, determining the manner in which the agency conducts an investigation is part of the enforcement action committed to agency discretion. *Hall v. U.S. Army Corps of Eng'rs*, No. 4:08CV00278 (BSM), 2008 WL 5058986 (E.D. Ark. Nov. 24, 2008); *see also Heide v. Scovel*, No. CV 08-727 (MJD/JJK), 2008 WL 11426848 (D. Minn. Oct. 2, 2008) (OIG decision making is committed to agency discretion by law and the decisions about the level of investigation desirable are enforcement-related and unreviewable).

Defendants' decision to characterize the request as a law enforcement sharing matter and to decline to provide the information is precisely the type of enforcement-adjacent decision that courts have consistently held to be committed to agency discretion. Where the agency's *Touhy* regulations expressly carve out law enforcement sharing from the *Touhy* framework, as is the case in the relevant regulations, the agency is not exercising *Touhy* discretion at all; it is exercising its inherent law enforcement discretion, which is presumptively unreviewable under *Heckler*.

Because the challenged actions were discretionary, Plaintiffs cannot utilize the APA to compel review, and this Court must dismiss their amended complaint. *See* 5 U.S.C. § 701(a)(2).

***No Cognizable Right***

The DHS *Touhy* regulations explicitly state that the regulation "is intended only to inform the public about Department procedures concerning the service of process and responses to demands or requests and is not intended to and does not create, and may not be relied upon to create any right or benefit, substantive or procedural, enforceable at law by a party against the Department or the United States" 6 C.F.R. § 5.41(g).

Courts have recognized that *Touhy* regulations are internal administrative procedures rather than sources of external legal rights. *United States v. Ramos-Guerra*, No. 3:19-CR-0076, 2023 WL 1997420 *9-10 (D.V.I. Feb. 14, 2023) (DHS Touhy regulations are exempt from APA notice and comment rulemaking because they concern matters relating to agency management and are rules of agency organization, procedure, or practice which do not create substantive rights); *Gillette v. Herbert*, No. CV 2017-0042, 2020 WL 5579824, (D.V.I. Sept. 16, 2020). Courts have found that similar disclaimer language, as that articulated in 6 C.F.R. § 5.41(g), prevents the creation of substantive or procedural rights. *United States v. Manafort*, 312 F. Supp. 3d 60, 75 (D.D.C. 2018) (Special Counsel regulations do not create any substantive or procedural rights and are simply "matters of agency management or personnel" and "agency organization, procedure, or practice" exempt from APA rulemaking).

ICE's decision not to process the Demand pursuant to the procedural frameworks of the *Touhy* regulations, instead treating the Demand as a law enforcement sharing request, falls within the discretion the regulations expressly

preserve. *See*, 6 C.F.R. § 5.41(f), (g), (i). Thus, § 5.41(g) bars any claim that procedural requirements create enforceable obligations. The disclaimer prevents Plaintiffs from claiming a procedural right to have their requests processed under *Touhy* when the agency determines the regulation does not apply to their particular request. While this does not necessarily preclude all APA challenges to the underlying agency decision, should the Court determine that Defendants' actions are reviewable, it does eliminate any claim that the requester has an enforceable right to invoke *Touhy* procedures in the first place or that Defendants were required to process the Demand under the regulations. The regulations function as internal agency guidance rather than creating external legal obligations that third parties can enforce in court.

**C. Defendants' actions were not arbitrary and capricious, an abuse of discretion, otherwise not in accordance with law, or in excess of statutory authority and thus Defendants' motion for summary judgment should be granted.**

Should the Court determine that Defendants' decisions are reviewable under the arbitrary and capricious standard, and decline to dismiss the suit, Plaintiffs' claims still fail, as Defendants actions were reasonable and not arbitrary and capricious under 5 U.S.C. § 706(2)(A); the agency's law enforcement sharing response articulated legitimate governmental interests and considered relevant factors; the agency's decision that Plaintiffs' Demand fell outside the scope of the *Touhy* regulations and also to invoke § 5.41(i) was consistent with the regulation's plain text and established agency practice; and any error in the decision making process was harmless.

Under 5 U.S.C. § 706(2)(A), a reviewing court shall hold unlawful and set aside agency action found to be arbitrary, capricious, an abuse of discretion, or otherwise not

in accordance with law. 5 U.S.C.A. § 706. The Supreme Court's arbitrary and capricious standard, articulated in *Motor Vehicle Manufacturers Ass'n of the United States, Inc,* 463 U.S. 29, 41, 43 (1983), and applied by the Eighth Circuit in *Mandan, Hidatsa & Arikara Nation v. U.S. Dep't of the Interior*, 95 F.4th 573, 579 (8th Cir. 2024), requires that agency action be reasonable and reasonably explained. *Motor Vehicle Manufacturers Ass'n of the United States, Inc.*, 463 U.S. 29; *Fed. Commc'ns Comm'n v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021). The agency must examine the relevant data and articulate a satisfactory explanation for its action, including a rational connection between the facts found and the choice made. *Motor Vehicle Manufacturers Ass'n of the United States, Inc.*, 463 U.S. at 41; *Mandan, Hidatsa & Arikara Nation*, 95 F.4th at 579.

Importantly, the Eighth Circuit applies a highly deferential standard--if an agency's determination is supportable on any rational basis, a reviewing court must uphold it. *Org. for Competitive Markets*, 912 F.3d at 459 (quoting *Voyageurs Nat. Park Ass'n.*, 381 F.3d at 763). The scope of review is narrow, and a court is not to substitute its judgment for that of the agency. *Svelte Constr., LLC v. Baran*, 368 F. Supp. 3d 1301, 1306 (D. Minn. 2019) (quoting *Rauenhorst v. U.S. Dep't of Transp.*, 95 F.3d 715, 718–19 (8th Cir. 1996)). A court must uphold an agency decision if there is any rational basis for it. *Noem v. Haaland*, 542 F. Supp. 3d 898, 919 (D.S.D. 2021) (quoting *Org. for Competitive Markets,* 912 F.3d at 459); *Cnty. of St. Louis v. Thomas*, 967 F. Supp. 370, 374 (D. Minn. 1997).

As discussed *supra*, Plaintiffs' Demand does not fall under the procedural requirements of Subpart C of the DHS *Touhy* regulations. Defendants did consider the

relevant factors of the Demand in comparison with the regulatory text and scope, and the determination that the Demand did not fall within the scope of the regulations and thus would not be processed as such was consistent with the overall regulatory scheme and plain language of the regulation itself. *Usher v. United States Department of Justice*, 698 F. Supp. 3d 174 (D.D.C. 2023) (in the mootness context, the court addressed whether a *Touhy* request survives after the underlying proceeding ends and held that once the underlying enforcement proceeding was dismissed with prejudice, the *Touhy* request became moot, reasoning that *Touhy* requests have "no purpose, let alone legal basis" beyond the underlying proceeding). Defendants' decision to process Plaintiffs' information requests outside the parameters of the *Touhy* regulations was not arbitrary and capricious and the interpretation of the regulations was reasonable.

Additionally, as outlined above, Defendants' *Touhy* regulations contain an express law enforcement carve-out, removing Plaintiffs' requests from the framework of the *Touhy* regulations. Defendants' decision to treat Plaintiffs' requests as law enforcement sharing and decision not to share the requested information is discretionary, reasonable and not arbitrary and capricious. The request came from a law enforcement authority in conjunction with a criminal law enforcement investigation or prosecution; Defendants considered the applicable regulatory framework; and provided a reasoned explanation for the characterization and denial. Additionally, Defendants' reading and application of the relevant regulations was reasonable. Defendants articulated a rational connection between the facts of the request and the decision to treat it as a law enforcement sharing matter, satisfying the

arbitrary and capricious standard under *Motor Vehicle Manufacturers Ass'n of the United States, Inc.,* 463 U.S. at 41. Defendants did consider the relevant factors, and the decision to process the Demand as a request for law enforcement sharing was consistent with the overall regulatory scheme. In addition, Defendants provided a written response to Plaintiffs' Demand, explaining the decision not to share the requested information. While no additional explanation was required other than that which explained that the Demand did not fall under the procedural requirements, Defendants provided one and cited to numerous policies that outline that law enforcement sharing is in fact discretionary.

The Agency declined to disclose the requested information for a number of reasons, including the fact that sharing of the information "would compromise the mission of DHS…and would also potentially impede or prejudice ongoing law enforcement investigations." Am. Compl. at Ex. 5 (ECF 9). Defendants' explanation — that the requested information is part of an ongoing law enforcement investigation or prosecution and that disclosure would undermine enforcement proceedings — is precisely the type of explanation courts have upheld in analogous cases. *Upsher-Smith Lab'ys, Inc. v. Fifth Third Bank*, No. 16-CV-556 (JRT/HB), 2017 WL 7369881 (D. Minn. Oct. 18, 2017); *CF Indus., Inc. v. Dep't of Just. Bureau of Alcohol, Tobacco, Firearms, & Explosives*, 692 F. App'x 177 (5th Cir. 2017).

Additionally, the discretion on whether to share law enforcement information is subject to compliance with other laws and regulations (*i.e.*, Privacy Act) and internal Agency policies. Here, the Agency opted not to disclose the information Plaintiffs

requested because it was protected from disclosure by statute or federal regulations. For example, the Demand sought personally identifying information of federal law enforcement officers, disclosure of which could jeopardize the safety and privacy of officers and other third parties. Plaintiffs' Demand also sought sensitive law-enforcement files, surveillance footage, radio transmissions, GPS data, reports, and interviews with Agency personnel without specifying any identified scope or time limitations. The Agency informed Plaintiffs that such information, deemed "For Official Use Only–Law Enforcement Sensitive," could not be disclosed as it pertained to open investigations and could reveal other sensitive law enforcement operations. Am. Compl. at Ex. 5 (ECF 9). (citing U.S. Immigration and Customs Enforcement Directive No 4003.2, *Safeguarding Law Enforcement Sensitive Information* at 5.7 (May 20, 2014)). The law enforcement exception, however, is discretionary; no explanation is required as to denial. Further, the responses were "boilerplate" only to the extent that the same rationales applied to all of the requests.

Additionally, Plaintiffs' theory that DHS acted "in excess of statutory authority" fails because DHS neither invoked nor exceeded any statutory authority in declining a discretionary request. Further, Plaintiffs' challenge to an alleged "policy or practice" fails because the APA does not permit programmatic challenges untethered to discrete agency action, and because Plaintiffs lack standing to challenge decisions on other jurisdictions' requests. The APA permits review only of discrete agency action. It does not permit a plaintiff to "seek wholesale improvement" of an agency's operations "by court decree, rather than in the offices of the Department or the halls of Congress,

where programmatic improvements are normally made." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 891 (1990); *see SUWA*, 542 U.S. at 64. Plaintiffs identify no written policy. Instead, they merely infer an unwritten one from the July 21 Decision, a separate decision on a different jurisdiction's request, and public statements about other incidents. Am. Compl. ¶¶ 12–13, 53–55.

Plaintiffs assert that the Agency's refusal to share the requested information pursuant to the law enforcement exception rests on "the basis of a series of boilerplate justifications that lacked any nexus to the facts of the case…." Am. Compl., ¶ 72. That similar reasoning was applied to similar requests reflects consistency, not an unwritten rule, and does not identify discrete agency action subject to review.

Lastly, to the extent that the Court believes that the *Touhy* factors should have been applied, many of the factors that were considered mirror those contained in the *Touhy* regulation.[9] Thus, any errors in the decision-making process represent harmless error.

---

[9] Upon the receipt of a proper *Touhy* request, DHS will consider, in pertinent part, whether such compliance would be unduly burdensome or otherwise inappropriate under the applicable rules of discovery or the rules of procedure governing the case or matter in which the demand arose; Whether compliance is appropriate under the relevant substantive law concerning privilege or disclosure of information; The need to conserve the time of Department employees for the conduct of official business; and, The need to conserve the time of Department employees for the conduct of official business. 6 C.F.R 5.48(a). Additionally, DHS will not typically comply with a request, in pertinent part, if Compliance would violate a statute or a rule of procedure; Compliance would violate a specific regulation or Executive order; Compliance would reveal the internal deliberative processes of the Executive Branch; or Compliance would potentially impede or prejudice an on-going law enforcement investigation. 6 C.F.R. 5.48(b).

The foundation for any harmless error argument in an APA action is 5 U.S.C. § 706, which instructs reviewing courts that when evaluating agency action, "due account shall be taken of the rule of prejudicial error." 5 U.S.C. § 706. The prejudicial error rule under the APA is the equivalent to "the same kind of 'harmless-error' rule that courts ordinarily apply in civil cases." *Shinseki v. Sanders*, 556 U.S. 396, 406 (2009). Section 706 is an "administrative law ... harmless error rule." *National Assn. of Home Builders v. Defenders of Wildlife,* 551 U.S. 644, 659 –60 (2007) (quoting *PDK Labs. Inc. v. United States Drug Enforcement Admin.,* 362 F.3d 786, 799 (C.A.D.C.2004)). The burden of showing that an error is harmful normally falls upon the party challenging the agency's determination, not the agency. *Shinseki*, 556 U.S. 396 at 409. *See also Sys. Stud. & Simulation, Inc. v. United States*, 22 F.4th 994, 996-97 (Fed. Cir. 2021).

When an agency offers multiple grounds for a decision, the decision will be affirmed as long as any one of the grounds is valid, unless it is demonstrated that the agency would not have acted on that basis if the alternative grounds were unavailable. *BDPCS, Inc. v. FCC*, 351 F.3d 1177, 1183 (D.C. Cir. 2003) (citing *Mail Order Ass'n of Am. v. U.S. Postal Serv.,* 2 F.3d 408, 434 (D.C.Cir.1993)); *SEC v. Chenery Corp.,* 318 U.S. 80, 88 (1943).

As the ultimate decision and rationale would be unchanged had the request been evaluated under the *Touhy* factors, Plaintiffs cannot point to any harmful error that would entitle them to relief.

**D. Plaintiffs' Tenth Amendment claim to entitlement to federal investigative materials fails because the Tenth Amendment only retains certain powers to the states and does not create a separate means to commandeer federal action.**

Plaintiffs erroneously claim a sovereign right under the Tenth Amendment to compel evidence from federal law enforcement agencies. Am. Compl., ¶ 97. Specifically, Plaintiffs insist they are "entitled to a declaration that the Defendants' policy or practice violates the Tenth Amendment and an injunction that prohibits Defendants from unduly delaying and preventing access to evidence critical to their investigation into potential violations of Minnesota criminal law." *Id.* The Tenth Amendment does not afford Plaintiffs any such relief.

The Tenth Amendment provides that "[t]he powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." U.S. Const. amend. X. It is a reservation of authority, not a cause of action authorizing States to compel federal agencies to disclose federal records, testimony, or investigative materials. *See New York v. United States*, 505 U.S. 144, 156-57 (1992) ("[T]he Tenth Amendment confirms that the power of the Federal Government is subject to limits that may, in a given instance, reserve power to the States."). In contrast, the Supremacy Clause establishes that Plaintiffs can have no such right against the federal government.

The cases upon which Plaintiffs rely do nothing to advance their Tenth Amendment claim. *See* Am. Compl., ¶¶ 92-94. Specifically, Plaintiffs invoke cases that stand for the general proposition that States have the right to regulate their police force. *See, e.g.*, *United States v. Morrison*, 529 U.S. 598 (2000) (Congress cannot regulate purely intrastate violent activity because "the regulation of and punishment of intrastate

violence…has always been the province of the States.”); *Patterson v. Kentucky*, 97 U.S. 501, 503 (1878) (Congress may regulate patent law consistent with its constitutional requirement to promote the sciences and useful arts but may not regulate the police because “the power to establish the ordinary regulations of police has been left with the individual States.”) (internal quotations omitted). There is no claim here, however, that the federal government is regulating Minnesota’s police officers. The cases upon which Plaintiffs rely miss wide of the mark.

Plaintiffs also assert that Defendants’ conduct “violates Plaintiffs’ core sovereign interest in investigating and enforcing Minnesota criminal law.” Am. Compl., ¶ 96. To the contrary, it is Plaintiffs who seek to abrogate the federal government’s sovereignty by requiring it to assist in their investigations. Neither the Tenth Amendment nor principles of dual sovereignty permit Plaintiffs to demand such action from the federal government.

The Supremacy Clause provides: “This Constitution, and the Laws of the United States which shall be made in Pursuance thereof… shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any thing in the Constitution or Laws of any State to the Contrary notwithstanding.” U.S. Const., art. VI, cl. 2. The Supremacy Clause “is designed to ensure that states do not ‘retard, impede, burden, or in any manner control’ the execution of federal law.” *New York v. Tanella*, 374 F.3d 141, 147 (2d Cir. 2004) (quoting *McCulloch v. Maryland*, 17 U.S. (4 Wheat.) 316, 436 (1819)); *cf. Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 153-54 (1982) (valid federal regulation preempts state law). Thus, “the sharp edge of the Supremacy Clause”

preempts any use of state process that requires the federal government to assist state law investigations contrary to its own statutes or regulations. *See United States v. McLeod*, 385 F.2d 734, 751 (5th Cir. 1967). Consequently, Plaintiffs cannot invoke the Tenth Amendment to override otherwise valid federal statutes and regulations governing DHS's disclosure of federal information.

## V. CONCLUSION

For the foregoing reasons, Defendants Department of Homeland Security and Markwayne Mullin, Secretary of the U.S. Department of Homeland Security, respectfully request that the Court dismiss Plaintiffs' Amended Complaint or, in the alternative, grant Defendants' Motion for Summary Judgment.

Dated: October 6, 2026

DANIEL N. ROSEN
United States Attorney

*/s/ Perry Sekus*

BY: PERRY F. SEKUS
Assistant United States Attorney
Attorney ID Number 0309412
600 U.S. Courthouse
300 South Fourth Street
Minneapolis, MN 55415
(612) 664-5600
perry.sekus@usdoj.gov